UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

GOLFCLUB LLC,                                                    Case No. 1:20-cv-4802

        Plaintiff,

    -against-                                             **COMPLAINT**

NBCUNIVERSAL MEDIA, LLC d/b/a                      **Jury Trial Demanded**
NBC, NBC SPORTS VENTURES LLC,
NBC SPORTS NETWORK, L.P.,
GOLFNOW, LLC, THE GOLF CHANNEL,
LLC a/k/a TGC, LLC d/b/a THE GOLF
CHANNEL, RORY MCILROY INC., and
RORY MCILROY,

        Defendants.
-----------------------------------------------------X

      Plaintiff, GolfClub LLC ("GolfClub" or "Plaintiff"), by and through its attorneys Joshpe

Mooney Paltzik LLP, for his Complaint against Defendants, NBCUniversal Media LLC d/b/a

NBC, NBC Sports Ventures LLC, NBC Sports Network, L.P. (NBCUniversal Media LLC d/b/a

NBC, NBC Sports Ventures LLC, and NBC Sports Network, L.P. collectively, "NBC"), GolfNow,

LLC ("GolfNow"), The Golf Channel, LLC a/k/a TGC, LLC d/b/a The Golf Channel (the "Golf

Channel"), Rory McIlroy Inc. ("McIlroy Inc."), and Rory McIlroy ("McIlroy") (Rory McIlroy Inc.

and McIlroy collectively the "McIlroy Defendants"), alleges and states as follows:

## SUMMARY OF THE ACTION

      1.     This is an action for unfair competition, arising under the Lanham Act, 15 U.S.C.

§§ 1051 *et seq.,* and for a violation of the federal antitrust laws based upon an illegal acquisition

under Sections 4 and 7 of the Clayton Act, 15 U.S.C. §§ 15, 18, and for monopolization under

Section 2 of the Sherman Act, 15 U.S.C. § 2.

## PARTIES

2.      Plaintiff GolfClub is a Delaware limited liability company duly registered with the New York Secretary of State and authorized to do business in the State of New York,    conducts business in the State of New York and in particular the Southern District of New York, and owns and operates GOLFPASS (as defined below).

3.      Defendant NBCUniversal Media, LLC d/b/a NBC is a Delaware limited liability company duly registered with the New York Secretary of State, having its principal place of business at 30 Rockefeller Plaza, New York, New York 10112.   NBC Sports Ventures LLC, also a Delaware limited liability company duly registered with the New York Secretary of State, and NBC Sports Network, L.P. a Delaware limited partnership also duly registered with the New York Secretary of State, are subsidiaries of NBCUniversal Media, LLC d/b/a NBC and also maintain their principal place of business at the same location.    Collectively, these entities are referred to herein as "NBC."

4.       NBC is mass media conglomerate that provides entertainment products made available via television broadcast, cable television, the Internet, theatrical release, and other means.   Defendant NBC conducts business throughout the world and the United States, and in particular conducts extensive and sustained business within the Southern District of New York, as well as on the Internet via a website located at http://www.nbcuni.com, various affiliated websites, and various social media platforms and accounts.

5.       Defendant GolfNow is a Florida limited liability company with a principal place of business located at 7580 Golf Channel Drive, Orlando, FL 32819, and is duly registered with the New York Secretary of State. Upon information and belief, GolfNow operates and manages NBC GOLFPASS (as defined below) under the direction of NBC, is owned in whole or in part

2

by NBC, conducts business throughout the world and the United States, and in particular conducts extensive and sustained business within the Southern District of New York

6.     Defendant Golf Channel is a Delaware limited liability company with a principal place of business located at 7580 Golf Channel Drive, Orlando, FL 32819.   Golf Channel conducts business throughout the world and the United States, and in particular conducts extensive and sustained business within the Southern District of New York.   Upon information and belief, NBC owns Golf Channel.

7.     Golf Channel cable network is available in millions of homes worldwide and regularly derives income from New York residents through, among other things, subscriptions to cable, satellite, and wireless companies, as well as social media sites such as Facebook, Instagram and Twitter.   In addition, Golf Channel, through its website, sells merchandise directly to consumers, including New York residents.

8.     Defendant McIlroy Inc. is a corporation that, upon information and belief, is based in Ireland, is under the control of McIlroy, and has been extensively involved in the design, marketing, and promotion of the NBC GOLFPASS platform.

9.     Defendant McIlroy is an individual who is a professional golfer.   Upon information and belief, McIlroy resides in Holywood, Northern Ireland, as well as Palm Beach Gardens, Florida.   McIlroy is a member of the European Tour and the PGA Tour.   He is a four-time Major winner and is currently the number one ranked golfer in the world, according to the Official World Golf Ranking.   Forbes magazine estimated that through the first half of 2019, McIlroy earned a staggering $39 million.   In August of 2019, McIlroy made $15 million—the largest pursue in history—for winning the PGA Tour's FedEx championship.   McIlroy has been extensively involved in the design, marketing, and promotion of the NBC GOLFPASS platform.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §1338.

11.     This Court has personal jurisdiction over NBC, because the principal place of business of the various NBC Defendants is located at 30 Rockefeller Plaza, New York, New York 10112 within the Southern District of New York, and these entities conduct extensive and sustained business activities within the Southern District of New York. NBC has also engaged in substantial marketing, promotion and subscription activities relating to NBC GOLFPASS targeted at New York residents.

12.     This Court has personal jurisdiction over GolfNow pursuant to due process and the New York Long Arm Statute due to GolfNow's extensive and sustained business activities in New York and commission of the infringement alleged herein within this forum, which arose out of transactions in the forum, as well as marketing, promotion and subscription activities relating to NBC GOLFPASS targeted at New York residents. In addition, upon information and belief, GolfNow is owned in whole or in part by NBC.

13.     This Court has personal jurisdiction over Golf Channel pursuant to due process and the New York Long Arm Statute due to Golf Channel's extensive and sustained business activities in New York and commission of the infringement alleged herein within this forum, which arose out of transactions in the forum, as well as marketing, promotion and subscription activities relating to NBC GOLFPASS targeted at New York residents. In addition, NBC owns Golf Channel.

14.     This Court has personal jurisdiction over the McIlroy Defendants pursuant to due process and the New York Long Arm Statute due to the McIlroy Defendants' extensive and

4

sustained business activities in New York and commission of the infringement alleged herein within this forum, which arose out of transactions in the forum, as well as marketing, promotion and subscription activities relating to NBC GOLFPASS targeted at New York residents.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, or alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

## BACKGROUND FACTS COMMON TO ALL COUNTS

16.     GolfClub is owned and operated by Christopher Silano ("Silano"), who is the founder and Chief Executive Officer ("CEO").   GolfClub operates GOLFPASS, which is a mobile application service, website, and United States Golf Association ("USGA") and Metropolitan Golf Association ("MGA") registered member golf club. GOLFPASS features a membership program and subscription service for playing golf and other golf related activities. GOLFPASS facilitates the discovery of new golf courses at a growing network of partner golf facilities and provides members with an easy to use platform for reserving tee times, golf practice, and golf instruction, all at exclusive member rates using an innovative credit based system. Members also receive exclusive content, invitations, and access to community events.

17.     In starting the GOLFPASS platform, Silano traded a successful career in finance for the unique challenge of building his own business from the ground up around a sport that he has passionately enjoyed and embraced since childhood.   Silano felt that the timing of the GOLFPASS business was uniquely optimal because its mission to encourage more young people to embrace golf and view the sport in a more positive and inclusive light came at a time when golf participation rates had been declining.   Silano sought to create a technology-based solution and business model different from any existing on the market that was aimed at increasing the demand

5

to play golf, provide crucial industry innovation, and help customers overcome existing barriers to entry at golf courses, while striving to unite people of all backgrounds and ages around a common love and passion for the game of golf.   As a community partner, GOLFPASS also sought to bolster the business prospects of golf course facilities around the nation, many of which have been struggling through declining memberships and revenues.   As part of that effort, GOLFPASS worked directly with golf course partners to merchandise their excess inventory, find new customers, and generate new revenue streams.

18.     Since at least as early as March 1, 2018, GolfClub has been using the mark GOLFPASS as its service mark and trade name consistently, extensively, and prominently in interstate commerce in connection with the creation, production, and sale of services offered by GolfClub's platform in the United States.

19.     For more than two-and-a-half years, GolfClub has used the GOLFPASS mark in connection with its interstate promotion of its platform and service in the United States and has thus garnered recognition and association with the GOLFPASS mark among golfers and enthusiasts in New York, New Jersey, Pennsylvania, and throughout the United States.

20.     GolfClub has extensively advertised and promoted its tee time and golf booking platform and service and has expended substantial time and money to popularize and advance its brand in multiple States and nationwide.

21.     To promote its business, GolfClub has used and continues to use the GOLFPASS mark in publishing through the website page at internet address www.golfpass.co since at least September 8, 2016, on which GolfClub prominently displays the GOLFPASS mark as a means of communicating to the consuming public information related to GolfClub's tee time and golf booking platforms and services.

6

22.     GolfClub has used and continues to use the GOLFPASS mark exclusively in the Apple App Store since at least July 2, 2018, on which GolfClub prominently displays the GOLFPASS mark exclusively as a means of communicating to the consuming public the availability of the GOLFPASS mobile application service developed by GolfClub.[1]

23.     Since January 22, 2019, and February 7, 2020 GOLFPASS has been officially recognized as an official USGA Member Club and MGA Member Club, respectively. Recognition as a USGA Member Club and MGA Member Club affords GolfClub the opportunity to supervise the progress of its members, provide peer review of such progress, participate in local tournaments and oversee individual players' World Handicap System indexes. This close association with the USGA, the game's premier governing body, gives GOLFPASS and its members access to golf insights and market trends and connects members with an extensive pool of information, materials, and connections pertaining to the state of golf. Furthermore, being a member of the MGA means GolfClub joins an organization that has been dedicated to promoting, protecting and preserving the game of golf in the New York Metropolitan Area for 119 years. These facts alone establish that the GOLFPASS service is much more than just a simple means for people to access golf courses. Rather, USGA and MGA club recognition demonstrates and further underscores that the GOLFPASS service strives to create a community of golfers of all backgrounds, skill levels, genders and ages to promote and grow competent, successful, and passionate golfers.

24.     On August 17, 2017, GolfClub filed an application with the United States Patent and Trademark Office (the "USPTO") for the word mark, "GOLFPASS", in International Class

---

1 Apple's app store policy states that it does not allow apps to have the same name. As an end-run-around, NBC's GolfPass iOS app is called "GOLFPASS Video."

041, Serial No. 87572861.

25.    Currently, the USPTO has issued a nonfinal Office Action, dated November 11, 2019.   USPTO actions are non-binding and merely serve as a persuasive authority, and Plaintiff believes, particularly based on other similar marks that have been granted trademark protection (CLASSPASS, MOVIEPASS, RESORTPASS, GYMPASS, DESKPASS) that Plaintiff is entitled to, and will eventually receive, federal trademark protection.

## DEFENDANTS' LANHAM ACT VIOLATIONS

26.    Defendants are, separately and together, engaged in various aspects of creating, producing, promoting, and selling a golf tee time and content subscription service and booking platform under the names GOLFPASS and GOLFPASS+ (hereinafter referred to together as "NBC GOLFPASS").

27.    On February 4, 2019, NBC, Golf Channel, and the McIlroy Defendants launched their NBC GOLFPASS product and service.

28.    McIlroy, the world's number one ranked golfer, partnered with NBC and Golf Channel as a founding partner to market, promote, and sell the NBC GOLFPASS product and service and, upon information and belief, is one of the owners of NBC GOLFPASS, either personally or through McIlroy Inc., and exercises some degree of influence and control over the NBC GOLFPASS platform.

29.    There can be no denying that McIlroy has actively participated in using his personal brand to promote the NBC GOLFPASS service and product and that he exercises control—legal or *de facto*—over the NBC GOLFPASS platform.   Indeed, in a press release issued by Golf Channel Public Relations on February 5, 2019 announcing the launch of the NBC GOLFPASS platform, McIlroy is described as "GOLFPASS founder" and a "perfect partner." McIlroy himself

referred to "[c]reating GOLFPASS" in the same press release.   On McIlroy's website, www.rorymcilroy.com, he writes, "I'm excited to partner with NBC Sports on GOLFPASS, the complete digital membership for golfers everywhere."

30.     In a blatant disregard for the rights of GolfClub, which had established use of the GOLFPASS mark in building its product and service, and of whom Defendants were most certainly aware, on February 4, 2019, Defendants highlighted their launch of the NBC GOLFPASS services through a significant televised segment on the Tonight Show Starring Jimmy Fallon (the "Tonight Show"), during which Defendant McIlroy presented the release of the NBC GOLFPASS services before an international audience, willfully swamping the efforts of GolfClub—senior user of the GOLFPASS mark—to extend its brand recognition.

31.     The NBC GOLFPASS services specifically permit users to enroll in tee time credit subscription services and connect with participating golf facilities, and, as such, is a directly competing service with GolfClub's tee time and golf booking platforms and services.

32.     The NBC GOLFPASS services are actively marketed and sold on a website created by Defendants, https://www.golfpass.com.

33.     The NBC GOLFPASS services are also actively marketed and sold on Defendant Golf Channel's website https://www.golfnow.com, in a partnership with Golf Channel's GOLFNOW service ("GOLFNOW").

34.     Upon information and belief, Defendants have also developed, marketed, and have partnered to sell the GOLFNOW tee time and golf booking platform that directly offers their customers access to the NBC GOLFPASS services, and through which customers may purchase tee times at golf courses throughout the country.

35.     Disregarding the rights of GolfClub—a much smaller and less powerful party than

9

NBC, GolfNow, Golf Channel or McIlroy—and GolfClub's common law ownership of the GOLFPASS mark, Defendants have engaged in unfair competition as a junior user of the GOLFPASS mark, to which GolfClub is the senior owner, and Defendants have intentionally sought to overshadow, overwhelm, and swamp GolfClub's good will and senior use of the mark, resulting in reverse confusion against GolfClub's mark.

36.    Defendants NBC, GolfNow, and Golf Channel have utilized significant capital and effort to overshadow, overwhelm, and swamp the hard work, expenses, and brand recognition established by GolfClub through promotion of the GOLFPASS mark, resulting in actual confusion against GolfClub's GOLFPASS mark.

37.    Defendants NBC, GolfNow, and Golf Channel have utilized significant capital and heavily leveraged McIlroy's star power to sell and advertise the NBC GOLFPASS services with the intention to overshadow, overwhelm, and swamp the hard work, expenses, and brand recognition established by GolfClub's senior use of the GOLFPASS mark, thus resulting in confusion against GolfClub's GOLFPASS mark.

38.    McIlroy's likeness appears on numerous promotional material detailing his partnership with NBC, GolfNow, and Golf Channel in selling the NBC GOLFPASS services, including advertising campaigns, videos, promotional materials, and sweepstakes prizes, which are all aimed at increasing Defendants' brand recognition for the NBC GOLFPASS and GOLFNOW services, and overshadowing, overwhelming, and swamping the good will established by GolfClub's senior use of the GOLFPASS mark for conflicting services.

39.    As a result of Defendants' efforts to overshadow GolfClub's GOLFPASS services, numerous customers have experienced actual confusion as to the source of Plaintiff's and Defendants' offered services.

40.     For instance, immediately after the February 5, 2019 interview segment with McIlroy on the Tonight Show, Silano received many messages and calls from associates, friends, and family members mistakenly congratulating him and his GOLFPASS service for partnering with the Defendants and for having McIlroy appear on the Tonight Show.   There was never any such partnership or affiliation, and such confusion evidences the actual infringement caused by Defendants against Plaintiff's mark.

41.     GolfClub has received countless communications from customers confusing its GOLFPASS service with the NBC GOLFPASS service.   In many of these instances, customers meaning to complain and express frustration with the NBC GOLFPASS services, including, for example, various bugs and malfunctions in the NBC GOLFPASS service or demanding refunds, mistakenly contacted GolfClub to express displeasure with Defendants' service.   These communications forced Silano to respond to each one in an effort to correct the confusion and to mitigate the damage from losing potential customers due to the negative association with Defendants' service.

42.     Numerous users of the NBC GOLFPASS service have also mistakenly posted negative—often extremely critical—reviews of the NBC GOLFPASS service on public websites, including other public application review websites, negatively impacting the perception of the GOLFPASS image, deterring potential customers from joining GolfClub's GOLFPASS service, and thus harming GolfClub's present and future business.

43.     Two written reviews on the ProductHunt webpage for GolfClub's GOLFPASS services mistakenly warn GolfClub's customers: "Don't get golfpass!!" (excerpt from a review referring to a golf club in Georgia, where Defendants—not Plaintiff—offer their service), and "I immediately demanded cancelation of any membership and refund of my money but I have a hunch

11

this is a big racket and I will never see a dime refunded. What a disreputable service" (excerpt from a review referring to Defendants' NBC GOLFPASS service).

44.     In another instance of mistaken identity, a customer inadvertently sent an email targeted for Defendants to GolfClub and exclaimed, "I am sick of attempting to unsubscribe from your stupid mailing list. Would you please sort it out for me?" The email included a forwarded advertisement by Defendants to the customer.

45.     Further evidencing the actual confusion in the marketplace between GolfClub's GOLFPASS service and Defendants' NBC GOLFPASS service, another email from a customer of Defendants was mistakenly sent to GolfClub explicitly stating that: "I am a member of GolfNow. Are you part of GolfNow? I'm confused."

46.     Additionally, on February 13, 2019, an online news webpage published a story detailing Defendants' launch of their NBC GOLFPASS services entitled "NBC Sports Launches GolfPass in Partnership with Rory McIlroy," mistakenly featuring GolfClub's GOLFPASS logo, indicating yet another instance of actual confusion.

47.     Then, in the most telling incident of all, NBC's own social media account mistakenly confused GOLFPASS for NBC GOLFPASS!   On April 27, 2020, Silano received a notification from Facebook that GOLFPASS'S Facebook account page had been mentioned in a post.   The GOLF Business Solutions Facebook account, which is an NBC account and has the NBC peacock logo featured prominently, posted "Tune in tonight for Fairway to Table – a new series on GolfPass.   Get an inside look at the premier cuisine served up to top golf and country clubs nationwide." This post included a link to GolfClub's GOLFPASS Facebook business page.

48.     Communications from a Golf Channel employee directed towards GolfClub on social media immediately prior to Defendants' launch of their NBC GOLFPASS service indicate

that Defendants had actual knowledge of GolfClub's established use of the GOLFPASS mark in commerce.   On January 11, 2019, just weeks prior to the roll-out of NBC GOLFPASS, Golf Channel executive David Curran ("Curran") emailed GolfClub's GOLFPASS Facebook account and asked, "Can you tell me more about your business?"   Silano was perplexed by this communication from out-of-the-blue but responded, "Thank you for the message.   What would you like to know?   We're happy to give you some insight."   Curran never responded, further indication of bad faith and willful intent to deprive GolfClub of rights associated with the GOLFPASS mark.

49.     Defendants' use of the NBC GOLFPASS and the market's false association of NBC GOLFPASS with GolfClub's GOLFPASS mark has harmed GolfClub's business relationships with clients and partners and made it extremely difficult for GolfClub to partner with other businesses and golf clubs to develop meaningful and profitable relationships.

50.     In fact, NBC GOLFPASS has a very poor reputation with the operators of many golf courses.   Since the launch of NBC GOLFPASS, GolfClub has found it extremely difficult to communicate with golf clubs that assume GolfClub is part of NBC GOLFPASS.   In other cases, potential golf club partners have expressed concerns to Silano about partnering with GolfClub out of fear of retaliation by Defendants.

## ANTITRUST VIOLATIONS BY NBC, GOLFNOW, and GOLF CHANNEL

51.     In addition to misappropriating GolfClub's mark, causing actual confusion, and inflicting serious business damage on GolfClub's GOLFPASS business, Defendants NBC, GolfNow, and Golf Channel have engaged in anti-competitive activities and deceptive business practices designed to control and monopolize the online tee time agent (OTTA) golf booking industry.

52.     NBC GOLFPASS and GOLFNOW, which together are a single OTTA enterprise, are part of the Golf Channel platform, which provides a number of products and services, including content streaming and tee time booking.    On NBC GOLFPASS, a subscription service, customers pay for content, and as part of those fees, are also able to obtain credits to book discounted greens fees through the GOLFNOW platform.

53.     On GOLFNOW, customers are able to view and book tee times at participating golf courses throughout the country. In order for a golf course to be listed on the GOLFNOW platform, GolfNow requires golf course facilities to enter into contracts bartering up to 3 tee times daily to GolfNow. GolfNow then has the right to market, sell, and keep the revenue from these tee times however they would like and at a market rate they see fit.

54.     GolfNow prominently markets and displays these bartered tee times that are provided by golf courses as "Hot Deals," and receive 100% of the revenue associated with these tee times. By intentionally driving customers to "Hot Deal" tee times via their website, daily email, and other marketing efforts, GolfNow is directly harming the golf courses it says it is helping and partnering with, and instead essentially trying to set the price in the market as a monopolist. However, because the GOLFNOW and NBC GOLFPASS platforms have the backing and resources of NBC, golf course owners and managers feel compelled to list their courses on the GOLFNOW and NBC GOLFPASS platforms even though GolfNow markets and keeps 100 percent of the revenue rather than marketing tee times for which golf course owners would share in the revenue.

55.     Additionally, GolfNow is able to coerce golf course facilities onto its platform because many of these facilities do not have significant technology infrastructure.   However, GolfNow provides an application program interface ("API") and other golf related technology

platforms that enable golf course facilities to utilize GolfNow technology infrastructure to list and book online tee times, process payments, manage inventory, and other golf related functions.

56.     Previously, in addition to GolfNow, there was only one other OTTA that also provided an API for digital tee time booking, had some meaningful market-share, and provided an alternative to GolfNow's product: TeeOff.com, which was owned by EZLinks Golf LLC ("EZLinks").

57.     However, on November 20, 2019, an NBC affiliate—NBC Sports Group—announced the acquisition (the "Acquisition") of EZLinks, thus consolidating almost all OTTAs, digital booking technology and market share under the common umbrella of NBC control.

58.     NBC, GolfNow, and Golf Channel now control TeeOff.com, which is part of EZLinks' portfolio of assets, in addition to the GOLFNOW/NBC GOLFPASS booking platform. According to Forbes Online Contributor, Erik Matuszewski, "GolfNow was already the biggest online tee time agency in the golf industry. Now it's seized an even bigger share of the market. In a move with major ramifications throughout the golf world, NBC Sports Group acquired EZLinks Golf, including its technology platforms, business solutions and, perhaps most significantly, its prominent online tee time booking platform TeeOff."

59.     Jay Karen ("Karen"), CEO of the National Golf Course Owners Association, believes that the acquisition consolidates over 90 percent of the online tee time industry, a virtual monopoly by almost any standard.

60.     GolfClub also uses the EZLinks API on the GOLFPASS application to allow customers to book tee times through Plaintiff's GOLFPASS app.     With NBC, GolfNow, and Golf Channel now controlling EZLinks, these affiliated Defendants have a virtual monopoly with major anti-competitive implications.   It also places GolfClub, as well as other golf clubs and facilities

15

throughout the country, further at the mercy of these Defendants since they could deny GolfClub

access to the EZLinks API at any time and further decimate GolfClub's once promising business.

## CLAIMS FOR RELIEF

## COUNT ONE

**Unfair Competition and Deceptive Competition Against Defendants NBCUniversal Media LLC d/b/a NBC, NBC Sports Ventures LLC, NBC Sports Network, L.P., GolfNow, Golf Channel, McIlroy Inc., and McIlroy in Violation of Section 43(A) of the Lanham Act, § 15 U.S.C. 1125(a)**

61.     Plaintiff, GolfClub, repeats and realleges each and every allegation of the foregoing

paragraphs as if fully set forth herein.

62.     Defendants NBC, GolfNow, Golf Channel, and the McIlroy Defendants have

partnered with each other to sell, promote, and advertise the NBC GOLFPASS trademarks.

63.     NBC GOLFPASS is an online service marketed and offered to golfers and golf

course facilities throughout the United States and elsewhere, and which also sells goods to this

target audience of consumers.

64.     The acts of Defendants NBC, GolfNow, Golf Channel, and the McIlroy Defendants

in furtherance of their marketing, operation, and promotion of NBC GOLFPASS are likely to

cause, and have caused, confusion, mistake and deception among purchasers and potential

purchasers (golfers and golf course facilities) of products and services bearing the NBC

GOLFPASS trademarks as to the origin and sponsorship of the services rendered and goods sold

by Defendants, by reason of the fact that purchasers are likely to believe that Plaintiff's goods and

services (GOLFPASS) originate from, or are in some way properly connected with, approved by,

sponsored by, or endorsed by Defendants.

65.     Such confusion, mistake or deception has resulted from and continues to arise out

of Defendants' acts constituting false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

66.     Additionally, Plaintiff has incurred damages, and NBC, GolfNow, Golf Channel, and the McIlroy Defendants have profited from, Defendants' unauthorized use of the mark GOLFPASS.

67.     Upon information and belief, Defendants' acts were undertaken willfully and with knowing disregard of causing confusion, mistake and deception.

68.     By reason of Defendants' acts, Plaintiff has suffered and will continue to suffer irreparable damage. Unless this Court restrains Defendants from continuing these wrongful acts, the damage to Plaintiff will continue and increase.

69.     Such confusion, mistake or deception has resulted from and continues to arise out of Defendants' acts constituting false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

70.     Accordingly, Plaintiff has been damaged by Defendants' wrongful acts, and is entitled, pursuant to 15 U.S.C. § 1117(a), to an accounting of Defendants' profits from NBC GOLFPASS together with an award of same, compensatory damages, and the costs of this action.

71.     As well, NBC GOLFPASS is a "Counterfeit Mark" within the meaning of 15 U.S.C. § 1116(d), and Plaintiff is also therefore entitled to treble damages pursuant to 15 U.S.C. § 1117(b).

72.     Additionally, pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to an injunction preventing Defendants from engaging in further violations of 15 U.S.C. § 1125(a) to Plaintiff's detriment.

## COUNT TWO

**Unlawful Acquisition Against Defendants NBCUniversal Media LLC d/b/a NBC, NBC Sports Ventures LLC, NBC Sports Network, L.P., GolfNow and Golf Channel, in Violation of Section 7 of The Clayton Act, 15 U.S.C. § 18**

73.　Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

74.　Prior to the Acquisition, EZLinks, a golf technology and booking platform, was engaged in interstate commerce and activities affecting interstate commerce, to wit: offering an online platform for the OTTA and digital golf booking marketplaces used throughout the United States.

75.　NBC's, GolfNow's, and Golf Channel's Acquisition of EZLinks consolidates nearly all of the digital golf booking market share under the control of one corporate umbrella, thus having the effect of substantially lessening competition, and tending to create a monopoly, in the OTTA and digital golf booking lines of commerce, and therefore constituting an illegal acquisition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

76.　NBC's, GolfNow's and/or Golf Channel's Acquisition consolidates the majority of the digital golf booking both horizontally, as well as vertically, since EZLinks is both a payment and booking platform that is used by platforms such as GolfClub.

77.　According to the 2010 Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Horizontal Merger Guidelines"), the Herfindahl-Hirschman Index ("HHI") should be used to judge whether mergers or acquisitions have an anti-competitive result and effectively created monopolies.　HHI levels are calculated by totaling the squares of the market shares of each firm in the relevant market.　A relevant market is "highly concentrated" if it has an HHI level of 2,500 or more. A merger or acquisition is presumed likely to create or

18

enhance market power—and presumptively illegal—when the post-merger HHI exceeds 2,500 and the merger or acquisition increases the HHI by more than 200 points.

78.     The HHI measure means that the more concentrated the industry, and the more one firm dominates the industry, the higher the score and the more anticompetitive the market.    Based on Karen's 90 percent market share estimate, NBC's controlled market share of the online golf booking platform could equate to an HHI measure as high as 8,100—extremely high—if NBC, GolfNow and/or Golf Channel (excluding EZLinks' previous market share) owns 90 percent of the market.   The lowest possible HHI score would be 4,050 if both firms own roughly equal market share.   Either way, as a result of the Acquisition of EZLinks by NBC, GolfNow and/or Golf Channel, the industry is extremely consolidated and monopolistic now in contravention of the Clayton Act.

79.     Accordingly, pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15, Plaintiff is entitled to recover treble damages, prejudgment interest, and the costs of this action including attorneys' fees, for their injuries caused by Defendants' violations.

80.     As well, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff is entitled to an injunction requiring Defendants NBC, GolfNow, and Golf Channel to divest such assets sufficient either to enable the creation of a separate, distinct, and viable competing firm that can replicate EnLink's competitive significance in the marketplace before the Acquisition, or otherwise to restore competition to the online golf booking market comparable to that which existed before the Acquisition.

## COUNT THREE

**Monopolization by Defendants NBCUniversal Media LLC d/b/a NBC, NBC Sports Ventures LLC, NBC Sports Network, L.P., GolfNow and Golf Channel in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

81.     Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

82.     At all times relevant to this action, and continuing to the present time, Defendants NBC, GolfNow, and Golf Channel each possessed monopoly power in various geographic submarkets in the digital golf booking market.

83.     Defendants NBC, GolfNow, and Golf Channel have each willfully maintained, and unless restrained by the Court will continue to willfully maintain monopoly power by anticompetitive and unreasonably exclusionary conduct. Specifically, each of these Defendant used, and will continue to use, its monopoly power to dominate the OTTA and digital golf booking market, and to force golf facilities to provide these Defendants with free inventory (tee times) as a condition of participating in the GOLFNOW platform, being listed on GOLFNOW, and being able to utilize GOLFNOW's booking technology.    Absent the golf course facilities' coerced participation in these Defendants' violations, Defendants NBC, GolfNow, and Golf Channel would refuse to deal with the facilities and would refuse them participation in GOLFNOW. As a result of this coercion, golf course facilities, which typically do not have the technology infrastructure to establish their own online reservation systems, will continue to use Defendants' GOLFNOW technology system, at which point Defendants NBC, GolfNow, and Golf Channel will be positioned to take a larger and larger share of the tee time reservation fees that golf courses take.    Each of these Defendants have acted with an intent to illegally maintain its own monopoly power over the OTTA and digital golf booking market in various geographic submarkets, and their illegal conduct has enabled them to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

84.     Having coerced golf course facilities into surrendering tee times as a condition of participation in GOLFNOW, Defendants NBC, GolfNow, and Golf Channel are then able to sell those tee times through GOLFNOW and NBC GOLFPASS and keep *all* of the revenue.   Since GolfNow acquired EZLinks, GolfNow has effectively monopolized the OTTA and digital golf booking market, and thus, it is extremely unlikely that golf course facilities will have reasonable alternatives to the GOLFNOW platform.   As a result, GolfNow, together with NBC and Golf Channel, will be in a position to extract larger and larger fees from golf course facilities and from parties like Plaintiff, and will be able to exclude Plaintiff from the OTTA and digital golf booking marketplaces.

85.     At all material times, Defendants' GOLFNOW platform transacted the sale of tee times, listed golf course facilities, and Defendants NBC, GolfNow, and Golf Channel granted golf course facilities the use of GOLFNOW's booking technology, all in a continuous and uninterrupted flow of commerce across state lines throughout the United States.

86.     The relevant product markets are the intertwined markets for OTTA and digital golf booking.

87.     At all relevant times, Defendants NBC, GolfNow, and Golf Channel maintained monopoly power over the OTTA and digital golf booking markets.

88.     The relevant geographic market is the United States and its territories.

89.     But for the unlawful actions of NBC, GolfNow, and Golf Channel, Plaintiff would have benefitted from fair price competition in the OTTA and digital golf booking markets.

90.     Accordingly, pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15, Plaintiff is entitled to recover treble damages, prejudgment interest, and the costs of this action including attorneys' fees, for its injuries caused by Defendants' violations.

## JURY DEMAND

91.     Plaintiffs hereby demand trial by jury.

**WHEREFORE**, Plaintiff, GolfClub LLC, demands judgment against the Defendants as follows:

a.      On Count One, finding that all of the Defendants have engaged in, and continue to engage in, unfair competition in violation of 15 U.S.C. § 1125(a);

b.      On Count One, pursuant to 15 U.S.C. § 1117(a), an accounting of Defendants' profits from NBC GOLFPASS together with an award of same, compensatory damages, and the costs of this action;

c.      On Count One, pursuant to 15 U.S.C. § 1117(b), treble damages;

d.      On Count One, pursuant to 15 U.S.C. § 1116, an injunction permanently preventing each of the Defendants from engaging in further acts, marketing, practices, and promotions that are likely to cause confusion between GOLFPASS and NBC GOLFPASS, to cause mistake between GOLFPASS and NBC GOLFPASS, to deceive as to the lack affiliation, connection, or association between GOLFPASS and NBC GOLFPASS, or to deceive as to the origin, sponsorship or approval of the services and commercial activities of GOLPASS and NBC GOLFPASS, in violation of 15 U.S.C. § 1125(a); and further permanently enjoining each of the Defendants from operating any business and/or website under the GOLFPASS name;

e.      On Count Two, finding that the acquisition of EZLinks by Defendants NBC, GolfNow, and Golf Channel constitutes an acquisition that has had the effect of substantially lessening competition and creating a monopoly within the meaning of 15 U.S.C. § 18;

f.      On Count Two, pursuant to 15 U.S.C. §15, treble damages, prejudgment interest, and the costs of this action including attorneys' fees;

      g.      On Count Two, pursuant to 15 U.S.C. § 26, an injunction requiring Defendants NBC, GolfNow, and Golf Channel divest such assets sufficient either to enable the creation of a separate, distinct, and viable competing firm that can replicate EZLinks's competitive significance in the marketplace before the Acquisition, or otherwise to restore competition to the online golf booking market comparable to that which existed before the Acquisition;

      h.      On Count Three, pursuant to 15 U.S.C. §15, treble damages, prejudgment interest, and the costs of this action including attorneys' fees;

      i.      Ordering that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action; for the modification of any such order; for the enforcement or compliance therewith; or for the punishment of any violations thereof; and

      j.      Any other relief that the Court deems just and equitable.

Dated:      New York, New York
             June 23, 2020

                                      Respectfully submitted,

                                        **JOSHPE MOONEY PALTZIK LLP**

                                      By: */s/ Edward A. Paltzik*
                                          Edward A. Paltzik

                                        360 Lexington Ave., Suite 1502
                                        New York, NY 10017
                                        (212) 344-8211 (Phone)
                                        (212) 313-9478 (Fax)
                                        epaltzik@jmpllp.com
                                        *Attorneys for Plaintiff GolfClub LLC*